Robert B. Sykes (#3180)
C. Peter Sorensen (#16728)
Christina D. Isom (#17244)
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykesmcallisterlaw.com
pete@sykesmcallisterlaw.com
christina@sykesmcallisterlaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CODY WAYNE GREENLAND, <br><br> Plaintiff, <br><br> vs. <br><br> D.T. CANNON, C. KINNAMAN, S. BLACKBURN; SGT. Q. ADAMSON, American Fork Police Officers, AMERICAN FORK CITY, by and through AMERICAN FORK POLICE DEPARTMENT (AFPD); and JOHN AND JANE DOES 1-10, <br><br> Defendants. | **COMPLAINT** <br> **& Jury Demand** <br><br><br> Civil No. 2:22-cv-00137-RJS <br><br> Judge Robert J. Shelby |

Cody Wayne Greenland, through counsel, complains against Defendants as follows:

## PRELIMINARY STATEMENT

This is a civil rights action in which Greenland seeks relief for Defendants' violation of his rights guaranteed by the United States Constitution, specifically the Fourth Amendment. These rights are further secured by the Civil Rights Act of 1871, codified as

42 U.S.C. §1983 and § 1988, and by the laws and the Constitution of the State of Utah. Greenland seeks compensatory and punitive damages; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable. This action also arises under the constitution, laws, and statutes of the State of Utah.

## JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and federal law, particularly under the provisions of the Fourth Amendment to the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

2.      This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

3.      The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Central Division. Venue is therefore proper under 28 U.S.C. § 1391.

4.      Plaintiff is seeking damages pursuant to the claims for relief specified below in amounts to be proved at trial.

5.      This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. §1988, and pursuant to the Court's inherent power under State law.

6.     This action also seeks redress for violations of Plaintiff's constitutional rights secured by the Utah Constitution. This Court further has pendent jurisdiction over any and all State claims.

## PARTIES

7.     Plaintiff **Cody Wayne Greenland** ("Greenland" or "Cody") is a citizen of the United States of America and was at various times a resident of Salt Lake and Utah Counties, State of Utah.

8.     Defendant **Officer D.T. Cannon** ("Cannon") was at all relevant times herein an officer with American Fork Police Department, a department of American Fork, operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

9.     Defendant **Officer C. Kinnaman** ("Kinnaman") was at all relevant times herein an officer with American Fork Police Department, a department of American Fork, operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

10.     Defendant **Officer S. Blackburn** ("Blackburn") was at all relevant times herein an officer with American Fork Police Department, a department of American Fork, operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

11.     Defendant **Sgt. Q. Adamson** ("Adamson") was at all relevant times herein an officer with American Fork Police Department, a department of American Fork,

operating in the course and scope of his employment, and under the color and guise of the laws of the State of Utah.

12.     Defendants **John & Jane Does 1-10** ("Does") were each at all relevant times herein an officer with American Fork Police Department, a department of American Fork, operating in the course and scope of his/her employment, and under the color and guise of the laws of the State of Utah.

13.     Defendant **American Fork** is a political subdivision of the State of Utah. American Fork has a law enforcement branch known as the **American Fork Police Department ("AFPD")** which is authorized to operate by American Fork and the State of Utah. American Fork funds and supervises the AFPD and is legally responsible for the acts of its employee officers that are within the course and scope of their employment. American Fork, through the actions of AFPD Officers Cannon, Kinnaman, Blackburn, Adamson, and Does 1-10, is a "person" within the meaning of 42 U.S.C. § 1983. Officers Cannon, Kinnaman, Blackburn, Adamson, and Does 1-10 were at all times state actors.

## FACTUAL ALLEGATIONS

14.     The incident in question occurred in the early evening hours of April 17, 2020. Some of the background facts occurred in the early morning hours of April 17, 2020.

15.     All events relevant to this Complaint took place near the Target parking lot located generally at 57 North 700 West, Suite B, American Fork, Utah 84003.

16.     On or about, April 17, 2020, at approximately 6:30 pm, Defendants Cannon, Kinnaman, Blackburn, Adamson, and the Does responded to an alleged unidentified male possibly breaking into cars that had been called in by a shopper in the nearby Target parking lot.

17.     Early in the morning of April 17, 2020, Cody Greenland was addressing a work matter with his employer, from whom he rented a basement apartment. His employer had not paid him and there had been a disagreement. He had been up all night worried about finding a solution to save his job and his place to live.

18.     Later that afternoon, Cody's employer paid him a small amount in cash and kicked him out of the apartment. His employer called the Police and they gathered up all Cody's belongings into a few duffel bags and took him to a nearby gas station where his mom picked him up.

19.     Cody, who did not have a car, called his mother to take him to the American Fork Target store where his girlfriend, Tanya Turner, was shopping.

20.     Cody's mother dropped him off at the Target in American Fork City about 6:30 p.m.

21.     When Cody arrived in the Target parking lot with his mom, he unloaded his bags next to Tanya's car.

22.     Cody tried to open the doors to the car, but it was locked.

23.     Cody, who did not have a cell phone with him at the time, stopped his mom before she departed the parking lot and used her phone to call Tanya, but she did not answer her phone.

24.     Cody decided to go into Target to search for Tanya so he could get the keys to the car.

25.     Cody could not find Tanya in the store.

26.     Cody decided to go to the Dollar Tree, just across the shopping center from Target, to purchase some food items with his cash.

27.     After purchasing a few items, Cody walked back out toward Tanya's car to wait for her.

28.     At some point an unknown person saw an individual in the Target parking lot who appeared to be looking into a car and trying to get it open. They called 911.

29.     Officers Cannon, Kinnaman, Blackburn and Sergeant Adamson responded to the call.

30.     Officers Kinnaman, Blackburn and Adamson arrived at the Target parking lot at roughly the same time.

31.     Cannon arrived a few moments later.

32.     All officers were wearing body cameras during the incident.

33.     Kinnaman, Adamson and Blackburn saw Cody walking back toward Tanya's car.

**34.**     The three Officers cornered Cody with their vehicles.

**35.**     Kinnaman made the initial contact with Cody.

**36.**     Officers had no reason to suspect Cody of any crime.

**37.**     Cody fully complied and walked toward Kinnaman.

**38.**     Cody had a bottle of soda in one hand and a bag of food in his other hand.

**39.**     Cody made no aggressive motions toward officers.

**40.**     Cody made no verbal threats to officers.

**41.**     Within four seconds and without any provocation or warning, Kinnaman grabbed Cody's arms and hands and shoved Cody backwards.

**42.**     Cody was unarmed.

**43.**     Cody did not reach for his waist or pocket.

**44.**     Cody dropped the bag in his hands and placed his right hand in the air.

**45.**     Kinnaman was grasping his left hand so Cody could not drop the soda in his hand.

**46.**     Cody in compliance with officers' commands got on his knees on the ground with his hands raised above his head.

**47.**     Cody was fully compliant as he was surrounded by Officers Kinnaman, Blackburn and Adamson.

**48.**     Cody was not resisting officers.

**49.**     Cody was not fleeing officers.

**50.**     Cody did not have a weapon in his hands or anything that would be reasonably mistaken for a weapon.

**51.**     Cody's hands were visible to all officers.

**52.**     Officer Cannon exited his vehicle about 30 yards away from Cody and the other officers.

**53.**     Cannon ran, full speed, towards the scene.

**54.**     Without stopping to confer on the status of the encounter with the other Officers, Cannon ran toward Cody, tackled him from behind, and began punching Cody in the face and pounding his face on the pavement.

**55.**     Cannon intentionally, recklessly and/or wrongfully tackled Cody and was "aware that … [such] conduct will probably result in injury."

**56.**     Cody did not see Cannon coming and had no opportunity to protect himself from the assault.

**57.**     Kinnaman, Adamson and Blackburn had control of the situation with Cody.

**58.**     There was no reasonable explanation or basis for Cannon to attack an unarmed, compliant Cody, from behind.

**59.**     Kinnaman, Adamson and Blackburn could have but did not stop the violent attack against Cody by Cannon.

**60.**     Defendants accused Cody of "fighting" them.

**61.** Cody did not fight the Defendants.

**62.** Cody instinctively kept his hands to his face and head because he was trying to protect himself from the violence of Defendants.

**63.** Cody did not threaten Defendants at any time.

**64.** Within seconds of being attacked by Cannon and the other officers, Cody immediately yelled "I'm good, I'm good!"

**65.** Defendants were on top of Cody during the attack and he could not move.

**66.** Cody could not move his arms to put them behind his back because of the attack.

**67.** Adamson tased Cody multiple times.

**68.** Adamson never warned Cody he would be tased.

**69.** There was no legal or factual basis for Cody to be tased.

**70.** Cannon ordered Cody to roll over, but Cody could not.

**71.** Cody was unable to move because of the way Defendants pinned him down to the ground.

**72.** Cody begged officer to stop the attack.

**73.** Cody told officers he was trying to comply multiple times.

**74.** Cody was on his knees, hands in the air when Cannon attacked him from behind and tackled him.

**75.**      Cannon was responsible for recklessly changing and escalating the nature of the encounter when he jumped Cody and tackled him.

**76.**      Cannon failed to adjust to changed circumstances when he tackled Cody.

**77.**      At the precise moment Cody was attacked by Cannon, he was fully compliant with Officers Kinnaman, Adamson, and Blackburn.

**78.**      At the precise moment of Cannon's attack, Cody was on his knees with his hands raised above his head

**79.**      Cody had no weapon; had not threatened the officers or anyone nearby; and was not fleeing or resisting arrest.

**80.**      Officers had no probable cause to arrest Cody.

**81.**      As Cody was finally being allowed to sit up, Adamson asked Kinnaman about Cannon's attack, "Do you think it was intentional?"

**82.**      Clearly, the two Officers realized that Cannon's attack was unprovoked, unnecessary, and intentional.

**83.**      Kinnaman, probably not sure about the question, said, "What?" Adamson realizing that he was being recorded on tape, backed off saying, "nothing, nothing."

**84.**      As Cody was being checked by the medical personnel, Adamson again asked Kinnaman what he thought had happened. Kinnaman immediately turned off his audio while he and Adamson discussed the encounter with Cody. At one point in the

video, while Adamson was showing Kinnaman how Cody had raised his hands and was kneeling on the ground, Kinnaman covered the camera.

85.     After Cody was in handcuffs, Cannon noticed a woman was taking video of the officers' attack on Cody. He approached her and asked for her to send him the video she had taken. Cannon characterized the unprovoked attack as "It's just work … this is normal for us."

86.     Cody was damaged at least as follows:

    **a.**     Ringing in the ears which started with the beating, and continues;

    **b.**     A concussion resulting in memory loss, sleep disturbance, and other sequalae;

    **c.**     Several broken fingers and knuckles caused by injury to the hands;

    **d.**     PTSD resulting from the event; and

    **e.**     Other damages.

87.     Cody was subsequently charged with several counts including possession of a controlled substance, possession of drug paraphernalia, and interference with arresting officer. *See,* Case No. 201401103.

88.     Cody is entitled to an award of attorney fees under U.S.C. 42 §1988 for all federal causes of action. He is also entitled to attorney fees under state law as the law may permit.

## FIRST CAUSE OF ACTION

### ~ *Unlawful Seizure* ~

### *Against Officers Cannon, Kinnaman, Adamson and Blackburn, in their Individual Capacities*

### *Cognizable under 42 U.S.C. §1983*

89.    Plaintiff incorporates all other paragraphs herein.

90.    A warrantless arrest is permissible only when an officer "has *probable cause* to believe that a person has committed a crime." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2017) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)) (emphasis added).

91.    For an officer to seize an individual, the officer "*must have a particularized and objective basis* for suspecting the particular person . . . of criminal activity." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (emphasis added).

92.    There may have been reasonable suspicion to stop Cody and question him. However, there was no evidence or information that would indicate to officers that Cody was the individual suspected of breaking into vehicles at Target.

93.    Defendants detained and arrested Cody without probable cause.

94.    It was objectively unreasonable to arrest Cody using the falsehood that Cody had been "fighting" with the Officers. "Obviously, events immediately connected with the actual seizure are taken into account as to whether the seizure is reasonable." *Bella v. Chamberlain,* 24 F.3d 1251, 1256 & n. 7 (10th Cir. 1994)*.*

95.    "[R]easonableness [of the seizure] depends on not only when a seizure is made, but also how it is carried out." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (brackets added). The body camera videos present dramatic evidence that the Cody was attacked without cause by Defendants.

96.    A trained, reasonable officer would have known that his initiating and escalating the encounter with Cody by attacking and tackling him would be excessive force.

97.    It was objectively unreasonable, shocking, and egregious for Cannon to aggressively attack Cody.

98.    It is equally objectively unreasonable, shocking, and egregious for Defendants to falsely claim "you were fighting with us, bro" as the justification for arresting Cody.

99.    At the time Cody was seized officers had no probable cause to believe Cody had committed a crime.

100.    Cody's seizure and arrest were not reasonable under the totality of the circumstances.

101.    Cannon, Kinnaman, Adamson and Blackburn are not entitled to qualified immunity based on their unreasonable, unlawful, and illegal seizure.

102.    It is clearly established and should be well known to a trained, police officer that an individual's constitutional rights are violated by an unreasonable, violent, and illegal seizure such as happened to Cody on April 17, 2020.

**103.**     The beating and attack by officers caused serious injuries to Cody's face, eyes and jaw which have required both medical and dental care.

**104.**     Damages also include pain, suffering and emotional distress.

**105.**     No remedy exists to make Cody whole other than this action.

**106.**     The conduct of Cannon, Kinnaman, Adamson and Blackburn warrant the imposition of punitive damages as may be allowed by law.

## SECOND CAUSE OF ACTION

### ~ *Excessive Force* ~

**Against Cannon, Kinnaman, Adamson and Blackburn in their Individual Capacities**

**Cognizable under 42 U.S.C. §1983**

**107.**     Plaintiff incorporates all other paragraphs herein.

**108.**     The U.S. Supreme Court has outlined three factors to evaluate reasonableness of force under the Fourth Amendment: (1) the *severity of the crime* at issue; (2) whether the suspect poses an *immediate threat* to the safety of the officers or others; and (3) whether the suspect is actively *resisting arrest or attempting to evade* arrest by flight at the precise moment that force is used. *Graham v. Connor,* 490 U.S. 386 (1989).

**109.**     The proper focus in determining the reasonableness of force used is on the events immediately confronting an officer when he or she decided to use force.

**110.**     Force is not reasonable when a suspect is non-violent, not resisting, not fleeing, or poses no threat.

**111.**     Force is not permitted at all when there is no need to use force.

14

112.     Taser use "unquestionably 'seizes' the victim in an abrupt and violent manner." *Cavanaugh v. Woods Cross City,* 625 F.3d 661, 665 (10th Cir. 2010). The nature and quality of "the intrusion into the interest" of a citizen who is tased is "quite severe." *Id.*

113.     A police officer violates the Fourth Amendment if he uses a "Taser against a non-violent misdemeanant who appeared to pose no threat and who was given no warning or chance to comply with officer's demands." *Cavanaugh*, 625 F.3d at 666-667.

114.     Although use of a taser is certainly preferable to deadly force, it is still a harsh method to subdue a person. A taser, by design, delivers an intense shock that causes great pain and is intended to disable the suspect. *Finlinson v. Millard County,* 2018 WL 5438436, *16 (D. Utah 2018).

115.     Defendants' use of force against Cody was unreasonable and excessive.

116.     Cody had committed no serious crime.

117.     At the time that Officers made contact with Cody he had at most, walked across the parking lot. This is not a crime under Utah law.

118.     Cannon recklessly, deliberately, and needlessly tackled Cody from behind while he was on his knees and had his hands in the air compliant with officers' commands.

119.     Cannon needlessly escalated the encounter.

120.     Through escalating the encounter, Cannon created, in his own subjective thinking, a justification for his ultimate use of unconstitutional force.

**121.**     Defendants failed to adjust to changed circumstances when they tacked, allowed to be tacked, and/or beat Cody after the tackling.

**122.**     Cannon knew that Cody was in compliance when he attacked him.

**123.**     Cody had done nothing serious enough to require an immediate arrest.

**124.**     Adamson never warned Cody he was going to be tased if he did not comply with commands.

**125.**     At the precise moment Adamson used force and deployed his taser, Cody was at most non-compliant.

**126.**     Cody never made verbal or physical threats, toward the officers at any time.

**127.**     At the precise moment Cannon used force, no one on the scene had alleged Cody was in possession of a weapon of any kind.

**128.**     At the precise moment Defendants used force, Cody possessed no weapon.

**129.**     Defendant Officers' subjective views of the encounter are irrelevant in the analysis of whether or not their use of force was reasonable. What is of importance is how an "objectively reasonable" officer would have addressed the situation.

**130.**     Defendants use of force was not objectively reasonable.

**131.**     Defendants violated Cody's federal constitutional rights to be free from excessive force.

132.     An objectively reasonable officer on the scene would have known that tackling and tasing a person in the back, without warning, constituted a serious, outrageous, and unnecessary use of force.

133.     It is clearly established and well known to all reasonably trained, police officers that an individual's constitutional rights are violated by the unreasonable use of a taser in the manner in which it was deployed in this case.

134.     In April 2020, every reasonable police officer would have been aware of the 10th Circuit case of *Lee v. Tucker*, 904 F.3d 1045 (10th Cir. 2018). In *Lee*, sheriff's deputies used a stun gun (taser) on Lee's back for an alleged misdemeanor domestic violence crime that involved arguing, intoxication, and Lee shoving his wife. *Id.* at 1147-48. The court held that "the law was clearly established that an officer may not use a Taser against a non-violent misdemeanant who appeared to pose no threat and who was given no warning or a chance to comply with the officers demands." *Id.* at 1150 (cleaned up and punctuation omitted). Adamson would have known in April 2020 that he could not use a taser on Cody because he was, at most, a non-violent misdemeanant who posed no threat.

135.     Defendants, acting under color of statute, regulation, custom, and/or usage subjected Cody to unnecessary, unreasonable, and excessive force, by unlawfully tackling him from behind and tasing him in the back without warning.

136.     Defendants are not entitled to qualified immunity based on their unlawful and illegal use of excessive force.

137.    Defendants' use of unreasonable and excessive force on Cody directly and proximately caused his injuries.

138.    Plaintiff has been damaged as set forth herein.

139.    The conduct of Defendants was outrageous and warrants the imposition of punitive damages as may be allowed by law.

### THIRD CAUSE OF ACTION

*~ Failure to Intervene ~*

*Against Cannon, Kinnaman, Adamson and Blackburn in their Individual Capacities*

*Cognizable under 42 U.S.C. §1983*

140.    Plaintiff incorporates by reference all other paragraphs herein.

141.    Cannon, Kinnaman, Adamson and Blackburn all used excessive force in the seizure of Cody Greenland.

142.    When Cannon used objectively unreasonable force by tackling and beating Cody, the other three Officers allowed Cannon's excessive force to continue.

143.    The other three Officers stood by for a few seconds and then, rather than intervening to prevent Cannon's illegal use of force, they all engaged in grabbing, striking, and kicking Cody.

144.    Kinnaman, Adamson, and Blackburn failed to intervene to stop Cannon.

145.     When Adamson used objectively unreasonable force by tasing Cody without warning and then, seconds later, tased him again, the other three Officers allowed Adamson's excessive force to continue.

146.     Officers Kinnaman, Cannon, and Blackburn failed to intervene to stop Adamson.

147.     "[E]ven if a single deputy's use of force was not excessive, a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under §1983." *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (quoting *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)).

148.     "[E]ven if one of the defendant deputies did not use excessive force, a reasonable jury could nonetheless find ... that he or she violated [plaintiff's] clearly established rights by not taking steps to prevent other deputies' excessive force." *Id.*

149.     Plaintiff has been damaged as set forth herein and is entitled to attorney fees.

## FOURTH CAUSE OF ACTION

### ~ *Outrageous and Conscience Shocking Conduct* ~

### *Against Officers Cannon, Kinnaman, Blackburn, and Adamson in their individual capacities*

150.     Plaintiff incorporates by reference all other paragraphs herein.

151.     The actions of Officers Cannon, Kinnaman, Blackburn and Sergeant Adamson were outrageous and conscious shocking for at least the following reasons:

**a.**    Cody was unarmed;

**b.**    Cody had committed no crime;

**c.**    No officer or other person was at risk of harm due to Cody's actions;

**d.**    At the moment that Officer Cannon tackled Cody from behind, Cody was on his knees, not fleeing or escaping;

**e.**    Cody was complying with Officers' commands while on his knees with his hands up in the air;

**f.**    Cody made it very clear that he was compliant with orders;

**g.**    There was no "immediately connected conduct" by Cody which justified the tackle from behind;

**h.**    Officer Cannon failed to adjust his response to changed or evolved circumstances; and

**i.**    The actions of Defendants in the tackling and tasing of Cody, and allowing and assisting in Cannon's actions, as set forth herein were outrageous and conscience shocking.

**152.**    The actions of the Defendants were outrageous and conscience shocking. Said actions, as set forth herein, constitute a substantive due process violation of the Fourteenth Amendment in that Defendants' actions "demonstrate[d] a degree of outrageousness and magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir. 1995).

**153.**    To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or "employ[ed] it as an instrument of oppression." *Williams v. Barney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (internal punctuation omitted).

154.     The Tenth Circuit has held that "[o]utrageous government conduct during a criminal investigation may constitute a violation of substantive due process rights." *Romero v. United States*, 658 Fed.Appx. 376, 381 (10th Cir. 2016) (citing *United States v. Mosley*, 965 F.2d 906, 908-09 (10th Cir. 1992)) (internal punctuation omitted).

155.     Outrageous conduct occurred in this interaction. This included Defendants' tackling and tasing Cody, as well as punching him and injury to his hands.

156.     The actions of Cannon, Kinnaman, Adamson and Blackburn violated Cody's Fourteenth Amendment right to due process of law.

157.     Plaintiff has been damaged as set forth herein.

158.     Plaintiff is entitled to attorney fees under §1988.

### **FIFTH CAUSE OF ACTION**

### *~ State Constitutional Claims ~*

***Against Cannon, Kinnaman, Adamson, and Blackburn in their Individual Capacities***

***Cognizable under Article I, Sections 7, 9 and 14 of the Utah Constitution***

159.     Plaintiff incorporates by reference all other paragraphs herein.

160.     Article I of the Utah Constitution, similar to the U.S. Constitution, provides protection of basic rights for its citizens, as follows:

      **a.**     Against illegal seizure – Section 7
      **b.**     Against excessive force and unnecessary rigor – Section 9
      **c.**     Against denial of due process – Section 14

**161.**    Cannon, Kinnaman, Adamson and Blackburn, as explained above, flagrantly violated the Utah Constitutional rights of Cody Greenland when they illegally seized him.

**162.**    Cannon, Kinnaman, Adamson and Blackburn flagrantly violated the Utah Constitutional rights of Cody when they used excessive force on a detained, seized individual after Cannon unreasonably attacked and tackled Cody as the other Officers joined in grabbing, beating, and tasing him.

**163.**    Defendants, as explained above, flagrantly violated the Utah Constitutional rights of Cody Greenland by denying him due process.

**164.**    The Utah Constitution Article I, Section 9 states:

> Persons arrested or imprisoned shall not be treated with unnecessary rigor.

**165.**    Defendants flagrantly violated the Utah Constitutional rights of Cody Greenland by subjecting him to unnecessary rigor.

**166.**    The Utah Supreme Court has clarified the "unnecessary rigor" clause of Article 1 §9 of the Utah Constitution as follows:

> The unnecessary rigor clause of the Utah Constitution protects persons arrested or imprisoned from the imposition of circumstances on them during their confinement that ***demand more of the prisoner than society is entitled to require. The restriction on unnecessary rigor is focused on the circumstances and nature of the process and conditions of the confinement***.

*Dexter v. Bosko,* 2008 UT 29, ¶17, 184 P.3d 592, 596 (emphasis added). The Court went on to say: "this may include ***being unnecessarily exposed to an increased risk of serious***

***harm***." *Id.* at 597 (emphasis added). As the following paragraphs show, Cody was unnecessarily exposed to an increased risk of serious harm. He was not only exposed to that risk, but he suffered directly from it, resulting in his damages.

167.     The Utah Supreme Court has held:

> We have held that the last sentence [of Article I, Section 9] makes section 9 ***broader than its federal counterpart***. *See Bishop I,* 717 P.2d at 267. Article I, section 9 is also a self-executing provision that prohibits specific evils that can be remedied without implementing legislation.

*State v. Lafferty,* 2001 UT 19, ¶73, 20 P.3d 342, 365. (emphasis and bracketed text added).

168.     Upon detaining Cody, Defendants were keenly aware that he was in compliance with their commands.

169.     Defendants knew Cody was not a threat or danger to anyone.

170.     Pursuant to the unnecessary rigor clause of Article I, § 9 of the Utah Constitution, Defendants had a duty to ensure that Cody was not unnecessarily exposed to an increased risk of serious harm.

171.     Defendants breached this duty by knowingly and intentionally attacking Cody ***while he was compliant,*** and doing so in a manner that exposed him to serious harm.

172.     Defendants have long been aware that there are specific well-established protocols in American Fork which are used to detain individuals safely.

173.     Defendants knowingly and willfully did not follow the established protocols to detain individuals safely.

174.     Because Defendants did not follow protocol in safely detaining Cody, they unnecessarily exposed him to a significantly higher risk of injury and accordingly "demand[ed] more of the prisoner than society is entitled to require." *Dexter,* at ¶17.

175.     Defendants' conduct exposed a detained Cody to harm, thus subjecting him to unnecessary rigor.

176.     Any reasonable official in the position of each Defendant would have understood that attacking the compliant Cody would expose him to an increased risk of harm, which occurred in this case.

177.     The Utah Supreme Court has held:

> In contrast, to recover monetary damages for a violation of the Utah Constitution, a plaintiff must demonstrate that the provision violated by the defendant is self-executing and then must establish three elements: (1) the plaintiff suffered a flagrant violation of his or her constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries.

*Jensen ex rel. Jensen v. Cunningham,* 2011 UT 17, ¶48, 250 P.3d 465, 478.

178.     Cody suffered a flagrant violation of his rights under the Utah Constitution, Article I, § 9, when Defendants knowingly and willfully violated protocol in safely detaining individuals by attacking and tasing Cody.

179.     Defendants had no reasonable justification for attacking and tasing Cody.

180.     There is no equitable relief that would adequately redress Cody's loss, nor are there existing remedies that would redress Cody's injuries.

181.     As a direct and proximate result of Defendants' recklessness in attacking and tasing Cody, Cody has suffered head trauma and PTSD associated with the attack.

182.     The Utah Constitution, Article I, Section 7 states:

> No person shall be deprived of life, liberty, or property without due process of law.

183.     Cody suffered a flagrant violation of his constitutional right not to be deprived of his liberty without due process when Defendants knowingly and willfully attacked him from behind. Defendants' recklessness in attacking a compliant, Cody resulted in his injuries.

184.     As a direct and proximate result of Defendants' flagrant violation, Cody was attacked from behind and tased for no reason.

185.     No other remedy for Cody's illegal seizure and unconstitutional injuries exists.

186.     Cody is entitled to damages and attorney fees as set forth herein.

187.     The conduct of Defendants warrants the imposition of punitive damages as may be allowed by law.

## SIXTH CAUSE OF ACTION

### *~ Intentional and/or Willful Misconduct Under Utah State Law ~*

### *Against Cannon, Kinnaman, Adamson, and Blackburn in their Individual Capacities*

188.     Plaintiff incorporates by reference all other paragraphs herein.

189.     On April 17, 2020, as described above, Officers Cannon, Kinnaman, Adamson, and Blackburn intentionally and/or willfully tackled, tased and attacked Cody.

190.     Generally, a governmental entity, its officers, and its employees are immune form suit, and immunity is not waived for injuries caused by the negligent act or omissions of an employee committed within the scope of employment. *See,* U.S.C.A §63G-7-201.

191.     The Utah Governmental Immunity Act does not apply to claims alleging willful misconduct. U.C.A. §63G-7-202(c)(i). "'Willful misconduct' means the ***intentional doing of a wrong act***, of the wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury." U.C.A. §63G-7-102(11) (emphasis added).

192.     Cannon's actions on April 17, 2020, were "willful misconduct" because he was aware or reasonably should have been aware that intentionally tackling a fully compliant detainee from behind would push the detainee face down into asphalt pavement, and then continuing to pummel him while on the ground, would "probably result in injury."

193.     Cannon's actions on April 17, 2020, were also "the intentional doing of a wrongful act" and/or "the failure to act" where he was "aware that [his own] conduct will probably result in injury," by tackling a fully compliant Cody from behind for no reason, driving him face down into asphalt pavement, and then continuing to pummel him while on the ground.

194.     The actions of Kinnaman, Adamson, and Blackburn on April 17, 2020, were also "willful misconduct" under §63G-7-102(11) because of their "wrongful failure to act" in not pulling Cannon off of Cody after the tackling or during the continuing attack.

195.     The actions of Kinnaman, Adamson, and Blackburn on April 17, 2020 were "willful misconduct" because after seeing Cannon intentionally and recklessly tackle Cody, who they knew had been fully compliant to their commands, they intentionally joined in the "wrongful act" by also pummeling Cody and, at the same time, tasing him on his legs and back knowing full well that doing so would "probably result in injury" to Cody.

196.     "'Personal injury'" means an injury of any kind."

197.     Any reasonable officer in the same position as Cannon would not have tackled and attacked an obviously compliant individual from behind.

198.     Any reasonable officer in the same position as Kinnaman, Adamson and Blackburn would have recognized Cannon actions were wrong and would have stopped him from continuing to attack Cody.

199.     Any reasonable officer in the same position as Kinnaman, Adamson, and Blackburn would not have joined with Cannon to attack and tase an individual who, only moments before, had been fully compliant before being tackled from behind and attacked by their fellow officer.

200.     As a direct and proximate result of Defendants' intentional and/or willful misconduct, Cody was injured when he was attacked from behind and tased for no reason.

201.     No other remedy for Cody's injuries exists.

202.     Cody is entitled to damages and attorney fees as set forth herein.

203.     The conduct of Defendants warrants the imposition of punitive damages as may be allowed by law.

## SEVENTH CAUSE OF ACTION

### *~ Unlawful or Deficient, Policies, Procedures and/or Protocols ~*

### *Against American Fork City through AFPD Relating to Defective Policies, Customs or Practices*

### *Cognizable Under 42 U.S.C. §1983*

204.     Plaintiff incorporates by reference all other paragraphs herein.

205.     The American Fork Police Department (AFPD) is an authorized department or division of American Fork. American Fork is therefore responsible for the actions of AFPD Officers.

206.     On April 17, 2020, as described above, Officer Adamson wrongfully and unreasonably tased Cody without warning, in an effort to unreasonably detain him.

207.     On April 17, 2020, as described above, Officer Cannon wrongfully and unreasonably tackled Cody from behind, without warning, in an effort to unreasonably detain him.

208. On April 17, 2020, as described above, Officers Cannon, Kinnaman, Blackburn, and Adamson, attacked Cody, in an effort to unreasonably detain him.

209. At all relevant times herein, American Fork was the employer, operator, and/or administrator of the AFPD.

210. American Fork through AFPD, had a duty to create, adopt, and promulgate, implement, enforce, revise, and/or update lawful policies, procedures, and/or protocols on the legal and safe tasing and detention of individuals.

211. American Fork through AFPD, knowingly and recklessly failed to create, adopt, promulgate, implement, enforce, revise, and/or update lawful policies, procedures, and/or protocols regarding tasing, arrest, excessive force, and detention, specifically about when such tactics and procedures are permitted by law and how to be conducted.

212. American Fork through AFPD failed to create, adopt, promulgate, implement, enforce, revise and/or update lawful policies, procedures and/or protocols ("policies") pertaining to tasing and the safe detention of individuals. The failure to have and utilize such policies proximately caused Officers to attack and tase Cody, without warning.

213. American Fork's failures as described above, caused Defendants to attack and tase Cody, resulting in his injuries, and loss of constitutional rights.

214.     The above-described actions, or inactions of American Fork, through the AFPD, constitute willful and wanton misconduct and needless disregard to the rights, health, well-being, and safety of Utah citizens, particularly Cody. Such needless disregard warrants the imposition of punitive damages.

215.     Plaintiff has been damaged as set forth herein.

216.     Plaintiff demands judgment against American Fork for compensatory damages, for punitive damages, for costs and attorney fees, and for such other relief as this Court deems just and proper, and as may be allowed by law.

### EIGHTH CAUSE OF ACTION

*~ Failure to Train and/or Supervise ~*

*Against American Fork City through AFPD, in their Official Capacity*

*Cognizable under 42 U.S.C. §1983*

217.     Plaintiff incorporates by reference all other paragraphs herein.

218.     The actions of Defendants toward Cody were pursuant to, and consistent with, established policies, practices, and/or customs of Defendant American Fork, through the AFPD, for which American Fork is responsible.

219.     AFPD had a practice, policy, or custom of arming police officers with tasers and condoning their use without requiring warning, and without providing proper training and/or supervision regarding their safe, reasonable, and appropriate use in situations like the one Defendants faced here.

30

220.     The actions of Defendants show a lack of training in safely detaining individuals.

221.     Because of the lack of training and supervision, Defendants unreasonably and improperly tackled and tased Cody and used unreasonable and excessive force to detain him, directly resulting in injuries and other damages described herein.

222.     The failure of American Fork, through AFPD, to properly train and supervise Defendant Officers resulted in their reckless tackling and tasing of Cody while he was compliant.

223.     Had there been proper training Cody never would have been tackled, beaten, and tased while he was compliant with officers' commands.

224.     The failure to train and supervise Defendants caused their reckless conduct which resulted in injuries to Cody.

225.     Defendant American Fork, through AFPD, was deliberately indifferent toward the proper training, arming, and supervision of its police officers.

226.     The actions of American Fork, through its AFPD, were the proximate cause of Cody's injuries and damages, as well as his pain and suffering.

227.     As a result of American Fork and the AFPD's actions, and in order to remedy this important issue of public concern, Plaintiff has had to retain legal counsel.

## INJURIES AND DAMAGES

228.     Plaintiff incorporates by reference all other paragraphs herein.

**229.**      Cody was illegally seized by Cannon, Kinnaman, Adamson, and Blackburn.

**230.**      Cody was exposed to unreasonable and unnecessary excessive force by Cannon, Kinnaman, Adamson, and Blackburn during the illegal seizure.

**231.**      We incorporate herein by reference all other paragraphs relating to damages.

**232.**      These damages were caused by the actions of Defendants, specifically Officers Cannon, Kinnaman, Adamson, and Blackburn, as well as American Fork, who are the employers of Defendant Officers.

## JURY DEMAND

Plaintiff demands a trial by jury on all Causes of Action included herein.

## REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiff prays judgment against Defendants as follows:

**1.**      For general and compensatory damages in an amount to be determined at trial.

**2.**      For special damages as are shown at trial;

**3.**      For punitive damages against Defendants as may be allowed by law and as are shown at trial;

**4.**      For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

**5.**     For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. §1988, and as may be available under state law; and,

**6.**     For such other and further relief as the Court deems just and proper.

DATED this 28th day of February, 2022

**SYKES McALLISTER LAW OFFICES, PLLC**

*Robert B. Sykes*
ROBERT B. SYKES
C. PETER SORENSEN
CHRISTINA D. ISOM